United States of America
District of Massachusetts

Suffolk, ss.

| | |
|---|---|
| John T. Kolackovsky, et al ) | |
| ) | |
| v.                         ) | Docket No._____ |
| ) | |
| Town of Rockport            ) | |

**Complaint**

Now comes the Plaintiffs who make complaint as follows:

1. Plaintiff John T. Kolackovsky is a natural person, resident in Rockport and registered to vote there, in addition to being a taxpayer.

2. Plaintiff Zenas B. Seppala is a natural person, resident in Rockport, registered to voter there in addition to being a taxpayer.

3. Plaintiff Anne Hyde is a natural person and abutter to the Railroad Station, resident in Rockport, registered to voter there in addition to being a taxpayer

4. Plaintiff Robert Sonia is a natural person, resident in Rockport especially being in the zone considered, registered to voter there in addition to being a taxpayer.

5. Plaintiff Jonathan Ring is a natural person, resident in Rockport and an abutter to the Railroad Station, registered to voter there in addition to being a taxpayer

6. Plaintiff Tim Rose is a natural person, resident in Rockport and an abutter to the Railroad Station, registered to voter there in addition to being a taxpayer.

7. Plaintiff Ray Thursby is a natural person, resident in Rockport and especially in the zone in contention, registered to voter there in addition to being a taxpayer.

8. Plaintiff Dee Oliberio is a natural person, resident in Rockport and especially in the zone in contention, registered to voter there in addition to being a taxpayer.

9. Plaintiff Calandra Salo is a natural person, resident in Rockport and registered to vote there, in addition to being a taxpayer.

10. Plaintiff Lary Salo is a natural person, resident in Rockport and registered to vote there, in addition to being a taxpayer.

11. Plaintiff Cassie Hohenwarter is a natural person, resident in Rockport and especially in the zone in contention, registered to voter there in addition to being a taxpayer.

12. The Defendant Town of Rockport is an incorporated municipality of the Commonwealth.

**Facts**

13. Following the Legislature's adoption of G. L. c. 40A §3A in 2021, the Commonwealth's Housing Department[1] has worked hard to promote MBTA Zoning.

14. MBTA Zoning purports to require municipalities to have at least one high density housing district drawn within a half-mile of mass transit. The statute requires of-right zoning for 15 units per acre, though the DHCD guidance has modified this in some ways.

15. Mr. Kolackovsky has, with other Plaintiffs, protested the constitutionality of the MBTA Zoning law, first before the Attorney General's Office and secondarily in a pending superior court case.

16. The Town of Rockport is referred to as a graying community, because its average population skews older and is continuing to tilt that way.

17. Rockport is also a less affluent community, following the demise of the granite industry which made it famous.

18. Mr. Kolackovsky's other case argues, amongst other things, that the Town was unconstitutionally compelled to comply with the MBTA Zoning law because it desperately needed grant funding for its DPW barn.

19. The Town Meeting voted, by a simple majority but not a super majority, in May 2022 to adopt a Transit Oriented Village Overlay District (TOVOD) to comply with the MBTA Zoning dictates.

20. The TOVOD was adopted based on a state law which lowered the threshold for adoption at Town Meeting for an MBTA Zoning district from the normal 2/3 majority to a simple majority. Mr. Kolackovsky's opposition was sufficiently strong at Town Meeting in 2022 that the TOVOD would have failed but for the lower simple majority threshold.

21. The Planning Board and others expressly told the Town Meeting that the TOVOD District was to comply with MBTA Zoning.

22. Having adopted a bylaw which attempts compliance with the MBTA Zoning dictates, the Town now plans to draw and implement the actual district, although this is a second attempt.

---

[1] In early 2023, the Governor filed a reorganization plan and the former Department of Housing and Community Development (DHCD) became the Executive Office of Housing and Livable Communities (EOHLC). Because DHCD was the applicable agency for most of the MBTA Zoning approval process, for consistency it will be referred to herein.

2

23. The Planning Board's present proposal is to draw an overlay district with three components.

24. The first component would be the dedicated TOVOD district, shaped like a "U" around the railroad station and confined by Railroad Avenue.

25. The second component, a residential district, is a rectangular strip of land set back from Route 127 but running along it, covering Poole's Lane, Paradis Circle, and part of Tarr's Lane amongst other residential streets.

26. The third component, a semi-residential district, is another rectangular strip of land along Route 127, covering three neighborhoods, including Sandy Bay Terrace, along the back of Loop Pond.

27. Combined, the three components make up an MBTA Communities Multi-Family Overly District (MCMOD).  The MCMOD will encompass more than 50 contiguous acres, which is a requirement of the MBTA Zoning guidelines as most recently amended by DHCD.

28. The current proposal was developed by the Planning Board in conjunction with a consulting firm named Bohler based on state metrics and a complex modelling system used by DHCD.

29. Mr. Kolackovsky and his fellow opponents of MBTA Zoning in Rockport were previously told that the adoption of the TOVOD District in 2022 was essential for compliance with the law.  It is now understood that the TOVOD District was insufficient to comply with the demands of DHCD and the MCMOD represents a second try at adopting a complying district.

**Count I – Declaratory Relief—Vote Threshold**

30. The Plaintiffs seek a declaration about the necessary prerequisites for the adoption of the MCMOD which will be presented to Town Meeting in a few months.

31. The Plaintiffs seek a declaration that, having previously tried to comply with MBTA Zoning through the adoption of the TOVOD district, any changes or further MBTA Zoning proposals are **amendments** not **adoptions** and therefore subject to the 2/3 supermajority requirement of G. L. c. 40A §5.

32. The Plaintiffs understand that the proponents of MBTA Zoning, including the Planning Board, contend that the adoption of the MCMOD only requires a simple majority at Town Meeting.

33. The controversy will have a real world impact upon zoning and the adoption, or not, of imminent zoning changes.

**Count II –Declaratory Relief—MCMOD is not a Uniform District and makes others non-uniform**

34. The Plaintiffs seek a declaration that the proposed MCMOD does not conform with G. L. c. 40A which requires that zoning districts be uniform.

35. Conceptually, the MCMOD is an overlay district.  However it does not comply with that term as used in the case, where the overlay normally more highly restricts the zoning applicable from the underlying zoning district.  Overlays normally tighten up restrictions.

36. Where, as here, the overlay is drawn over three segments and *loosens* the restrictions, it create inequality and a material lack of uniformity in the districts.  Not only is the MCMOD not uniform across its breadth for the three segments it crosses, it also creates non-uniformity in the three districts it crosses which are not within the MCMOD overlay.

**County III – Declaratory Relief—TOVOD complies with the MBTA Zoning Requirement**

37. The Plaintiffs seek a declaration that the existing TOVOD district complies with §3A.

38. A declaration is necessary because DHCD has created additional guidelines to implement MBTA Zoning.

39. Several of the provisions of DHCD's MBTA Zoning Guidelines contradict the express elements of §3A.  To the extend that DHCD is authorized to use sub-regulatory guidance, it may not contradict the statute's terms or interfere in the implementation of the Legislative's chosen policy.

40. For example the statute requires, as perhaps its only substantive restriction, a district allowing for at least 15 units per acre within 0.5 miles of mass transit.  The DHCD guidelines allow for the units to be averaged.  It also allows them to be averaged across districts that do not, in the majority, comply with the half-mile distance restriction, by allowing a mere 40% of the acreage demanded to be within the half-mile.

41. Several provisions of DHCD's MBTA Zoning Guidelines contradict the policy and clear implication of the statute.

42. At stake is the Town's ability to comply and remain eligible for grants, in addition to the zoning restrictions applicable to some of the Plaintiffs' properties (especially those who are within the proposed district).

43. A complying district prevents the vote threshold from changing at Town Meeting.

44. If TOVOD is a complying district, then the MCMOD is unnecessary.

4

**Count IV—§1983-Declaratory Relief—MCMOD lacks a rational basis (Substantive Due Process)**

45. The Plaintiffs seek a declaration that the MCMOD does not comply with the basic requirements of the use of a municipalities zoning power.

46. Courts are highly deferential to the enactment of legislative line-drawing.

47. The MCMOD lacks a rational basis and does not comply with the basic legal and constitutional framework for the drawing of a zoning district.

48. The MCMOD affects sharply the property values of the Plaintiffs in the proposed district.

49. The MCMOD is a simple mathematical conglomeration of land parcels until an arbitrary measure (decided upon by the State) is met. Its application is arbitrary in the sense that it could just as easily be drawn on the other side of Granite Street or Route 127.

50. The MCMOD inflicts upon the affected neighbors a withdrawing of the security of tighter zoning, primarily single-family zoning, and accompanying greenspace which influenced the purchase of their houses and maintenance of their homesteads. This undermines dramatically the expectation of the property owners in their parcel. The proposed district encompasses both higher and lower value houses, but on whole inflicts the cost of complying with MBTA Zoning on one of the less well-off areas of town.

51. The MCMOD, despite the technical assistance received from the consultant, simply draws a roughly rectangular district across several different underlying zoning.

52. The Town does not propose, as many other towns do, to draw more than one district to comply but mashes all its requirements together into a single, ugly and non-uniform district.

53. The Town did not draw the MCMOD district over any of the wide-open acre areas within the target half-mile radius, instead drawing primarily over area already developed.

54. The Town has not opted to use the flexibility provided by the State formula to spread the impacted acreage or high density requirement throughout town.

55. The drawing of this district as an overlay is also a cumbersome and problematic mingling of requirements, which muddies beyond regular citizen understanding what the law allows and what it forbids. The Town is taking the role of a lazy draftsmen who simple draws and island and declares superseding rule application, instead of properly enmeshing the district in the Town's comprehensive zoning code. This defeats the cases which allow overlays because they *tighten* restrictions. The proposed bylaw embeds conflict about land use into law, openly allowing MCMOD requirements which on their face conflict with the underlying zoning, leaving property owners to speculate at their peril about allowed uses.

**Count V--§1983-Declaratory Relief—Lingle Claim**

56. Repeating and realleging as above, the Plaintiffs claim that the proposed zoning regulation does not advance a substantial governmental interest.

57. The Commonwealth of Massachusetts has a housing crisis. This is primarily driven by the lack of affordable housing.

58. Based on the current state guidelines, which MCMOD will implement in Rockport, the regulation will not advance the Town's affordable housing target under state policy.

59. There is no other articulated strong governmental interest supporting the exercise of power represented by MCMOD.

60. Review of local zoning decisions in the context of federal claims is highly deferential, affording relief only in "truly horrendous" situations. The Plaintiffs submit that this is such a situation.

61. The MCMOD creates an overlay on an unfortunate section of town now chosen to host of-right multi-family high density housing. Other than the simple production of housing units in high density dimension no governmental objective is achieved. This creates market rate, normally expensive, housing. It does not allow for the government to promote or cater to the vulnerable populations who need additional housing opportunities like veterans, the disabled, the elderly, or the poor. This is simply a developers' buffet supported by no compelling or permissible government objective.

**Count VI--§1983 Declaratory Relief—Equal Protection**

62. Repeating and realleging as above, the Plaintiffs argue that the MCMOD violates the equal protection constitutional guarantee.

63. The equal protection guarantee prohibits treating similarly situated people different for arbitrary or capricious reasons.

64. The Town has drawn an MCMOD overlay district that deprives the Plaintiffs within the MCMOD of the benefits of the more restrictive zoning which protects their properties and its value.

65. In doing so, the Town has drawn an irrational district that does not conform to statutory uniformity requirements.

66. The Town has treated the residents in the MCMOD differently and less favorably than other neighborhoods of town which are also within the requisite 1/2 mile radius from the train station.

67. Drawing the district on the Northern side of the radius, along Granite Street, would allow the Town to meet all of the state's requirements, or on the other side of Route 127.  The MCMOD could also have been drawn on the other side of the 5 cornered intersection with Granite Street and Railroad Avenue, where the existing setbacks and lot sizes are smaller and more accommodating to the mandated multi-family of-right uses.

68. The Town did not make use of the present State Guidelines flexibility to move a portion of the high density housing to another area of Town, such as Pigeon Cove, which could spread the traffic load and other neighborhood impacts of the MBTA Zoning law.  The Town deliberately opted to concentrate the high density housing in one narrow neighborhood strip.

69. The present plan cuts the Semi-Residential (SMR) Districr almost in half, treating next-doors wildly differently.

70. The Town has deliberately and intentionally treated the impacted neighborhoods, Latoff Circle, Poole Lane, Applecart Road, differently from the other neighborhoods in Town, for specious and arbitrary reasons.

**Miscellaneous**

71. The Court has jurisdiction, subject-matter and personal, over this case.

72. Venue is proper in the Eastern Division.

73. The Plaintiffs have standing to bring this case, which presents an actual controversy about the adoption of MCMOD and how it will affect the Town's fiscal future and some of the Plaintiffs' properties.  Some of the Plaintiffs are within the MCMOD and would be affected by its adoption.

Wherefore the Plaintiffs seek declaratory relief as pled.

    Respectfully Submitted,
    John T. Kolackovsky et al
    By their Attorney
    /S/ Michael Walsh
    Michael Walsh
    BBO 681001
    Walsh & Walsh LLP
    PO Box 9
    Lynnfield, MA 01940
    617-257-5496
    Walsh.lynnfield@gmail.com